CARLOS PÉREZ VILLANUEVA y LUIS G. PELLOT FERRER, demandantes y peticionarios, *v.* JUNTA DE APELACIONES DEL SISTEMA DE ADMINISTRACIÓN DE PERSONAL, demandada y recurrida.

*Número:* CE-94-508          *Resuelto:* 13 de diciembre de 1995

*Oscar Ramos Olivares*, abogado de la parte peticionaria; *Carmen Delia Díaz Torres*, abogada de la parte recurrida.

EL JUEZ ASOCIADO SEÑOR CORRADA DEL RÍO emitió la opinión del Tribunal.

El presente recurso nos permite resolver la controversia de si las agencias, instrumentalidades o autoridades nominadoras del Estado Libre Asociado de Puerto Rico que se encuentran reguladas por la Ley de Personal del Servicio Público de Puerto Rico[1] tienen el deber de notificar a los ciudadanos que hayan sido certificados como elegibles —según lo dispone el inciso (9)(a) de la Sec. 4.3 de la refe-

_____

[1] Ley Núm. 5 de 14 de octubre de 1975, según enmendada, 3 L.P.R.A. sec. 1301 *et seq.*

rida ley,(²) según enmendada— que la plaza por ellos solicitada no les fue adjudicada. Ello como parte del proceso de reclutamiento y selección final de empleados públicos.

Luego de un análisis detenido de los estatutos pertinentes, y al amparo de las exigencias del debido proceso de ley, resolvemos en la afirmativa. Además, atendido el hecho de que de la situación fáctica del caso de autos no puede estimarse que los peticionarios hubiesen incurrido en incuria al presentar su escrito de apelación ante la Junta de Apelaciones del Sistema de Administración de Personal (en adelante J.A.S.A.P.), revocamos la sentencia recurrida. Los hechos del caso se exponen a continuación.

I

Los Srs. Carlos Pérez Villanueva y Luis G. Pellot Ferrer solicitaron empleo en el Cuerpo de Voluntarios al Servicio de Puerto Rico (en adelante Cuerpo de Voluntarios) con el propósito de ocupar una plaza vacante de Coordinador de Exploración Vocacional en el Centro *Job Corps* de Ramey en Aguadilla. Mediante una comunicación escrita, ambos aspirantes fueron citados por dicho cuerpo para la entrevista de empleo que se celebraría el 31 de agosto de 1992. En dicha comunicación se les exigió, como requisito previo a la entrevista, el obtener la autorización de *Res Care Corp.*, patrono para el cual se encontraban laborando. Por entender que dicho requisito era irrazonable y discriminatorio, tanto el señor Pérez como el señor Pellot se negaron a asistir a la entrevista y manifestaron a la entidad concernida sus razones para ello.

Posteriormente, los solicitantes, con la ayuda de representación legal, lograron que se les concediera una segunda entrevista ya eliminada la condición de autorización previa del patrono. Luego de ser entrevistados el 3 de sep-

---

(²) 3 L.P.R.A. sec. 1333(9)(a).

tiembre de 1992, advinieron en conocimiento, extraoficial-
mente, de que la plaza por ellos solicitada había sido adju-
dicada al Sr. José Reinat el 1ro de septiembre de 1992.
Según surge del recurso ante nos, el Cuerpo de Voluntarios
no les notificó tal decisión ni les informó de su derecho de
apelación ante J.A.S.A.P.

Tres (3) meses más tarde, el 18 de diciembre de 1992,
los señores Pérez y Pellot presentaron una petición de *in-
junction* contra el Cuerpo de Voluntarios ante el Tribunal
Superior para solicitar que se ordenase a dicho cuerpo efec-
tuar un nuevo procedimiento de selección entre los candi-
datos entrevistados para ocupar la referida plaza. Alega-
ron, en síntesis, que el Cuerpo de Voluntarios, al reclutar a
un empleado para la plaza vacante de Coordinador de Ex-
ploración Vocacional previo a la celebración de las entrevis-
tas de ambos demandantes para la obtención del mismo
puesto, había incurrido en violación a sus derechos consti-
tucionales y al principio de mérito consagrado en la Ley de
Personal del Servicio Público de Puerto Rico.

Dicha petición de *injunction* fue desestimada el 26 de
mayo de 1993 por el foro de instancia en vista de que no se
había agotado los remedios administrativos provistos en la
Ley de Personal del Servicio Público de Puerto Rico, y no
existía evidencia de factor alguno que justificase la prete-
rición de tales remedios.[3] No obstante, el referido foro
emitió una orden a los efectos de que el Cuerpo de Volun-
tarios presentara a los demandantes una copia certificada
del nombramiento en controversia, ya que en ningún mo-
mento se les había notificado la decisión tomada.

Inconformes, el 25 de junio de 1993 los demandantes
presentaron un escrito de apelación ante J.A.S.A.P. reite-
rándose en que la determinación del Cuerpo de Voluntarios
constituía una violación a sus derechos constitucionales,
así como a la Ley de Personal del Servicio Público de

---

[3] Copia de la notificación de dicha sentencia fue archivada en autos el 28 de
mayo de 1993.

Puerto Rico. Sin embargo, J.A.S.A.P. resolvió decretar la desestimación y el archivo de la apelación al amparo de la doctrina de incuria. Concluyó dicha junta que la apelación había sido presentada fuera del término jurisdiccional dispuesto por la Sec. 7.15 de la Ley de Personal del Servicio Público de Puerto Rico, 3 L.P.R.A. sec. 1395, y que, aunque ciertamente no se les había notificado a los apelantes la determinación del Cuerpo de Voluntarios, éstos no habían sido diligentes al presentar la correspondiente apelación.[4]

Inconformes, los apelantes presentaron un escrito de revisión ante el Tribunal Superior, Sala de Aguadilla, extinta Unidad Especial de Jueces de Apelaciones (Hon. Ángel González Román, Juez), alegando que J.A.S.A.P. había errado al desestimar la apelación presentada amparándose en la doctrina de incuria. Dicho foro dictó una sentencia el 31 de mayo de 1994 en la que confirmó la determinación de J.A.S.A.P. y sostuvo que, independientemente de la aplicación de la doctrina de incuria al caso de autos, aún procedía sostener la decisión de la agencia recurrida en vista de que, según surgía del expediente administrativo, el señor Reinat había sido entrevistado con dos (2) días de anterioridad a los demandantes y su nombramiento se había hecho efectivo al 1ro de septiembre de 1992, con el correspondiente informe de cambio firmado por el director el 3 de septiembre de 1992.

Finalmente, concluyó el tribunal apelativo que "[s]opesados los intereses de los recurrentes versus los intereses de la persona nombrada y el orden institucional de mantener la continuidad en la prestación de los servicios, la efectividad de su sistema de reclutamiento, retención y administración de presupuesto" (Apéndice I, pág. 7), procedía resolver que los recurrentes no habían sido diligentes en la reclamación de sus derechos.

---

[4] Solicitada oportunamente la reconsideración del referido dictamen, la Junta de Apelaciones del Sistema de Administración de Personal (en adelante J.A.S.A.P.) procedió a denegarla de plano.

De esta sentencia acudieron ante nos los peticionarios, Pérez Villanueva y Pellot, mediante una petición de *certiorari*, alegando que "[e]rró la Unidad Especial de Jueces de Apelaciones, al confirmar la actuación de la JASAP desestimando la apelación radicada por los peticionarios basándose en la doctrina de incuria".(⁵) Solicitud, pág. 4.

Luego de evaluar el recurso presentado, así como sus correspondientes documentos anejos, concedimos un término a la parte demandada recurrida para que mostrase causa, si la hubiere, por la cual no debíamos revocar la sentencia dictada y devolver el caso a J.A.S.A.P. Habiendo transcurrido dicho término y estando en posición de resolver el recurso de epígrafe, resolvemos según lo intimado.(⁶)

## II

Antes de analizar si erró el foro a quo al sostener que los aquí peticionarios no habían sido diligentes en el reclamo de sus derechos, y en consecuencia al confirmar la desestimación decretada, entendemos procedente determinar si

---

(⁵) Los peticionarios no incluyeron, como parte del apéndice de su recurso, el volante de notificación de la sentencia recurrida. Sin embargo, dicha sentencia fue dictada el 31 de mayo de 1994 y la petición de *certiorari* fue presentada ante nos el 15 de julio de 1994, por lo que resulta forzoso concluir que ésta fue presentada dentro del término jurisdiccional de sesenta (60) días que disponía la ley vigente a ese momento, Ley Núm. 11 de 2 de junio de 1993 (4 L.P.R.A. secs. 37–1). Ello, en vista de que el Cuerpo de Voluntarios al Servicio de Puerto Rico (en adelante Cuerpo de Voluntarios) resulta ser una instrumentalidad del Estado Libre Asociado de Puerto Rico.

(⁶) Adviértase que el Cuerpo de Voluntarios compareció ante nos alegando que no había recibido copia de la petición de *certiorari* presentada por los demandantes, por lo que solicitó un término adicional para cumplir con nuestra orden de mostrar causa a partir del recibo de dichos documentos. No obstante, la parte demandante recurrente presentó una moción de réplica a dicha comparecencia señalando que el 15 de julio de 1994 había presentado personalmente el referido recurso ante el Cuerpo de Voluntarios por conducto de uno de sus funcionarios. A esos efectos presentó como evidencia de tal presentación la copia de una hoja de recibo. El Cuerpo de Voluntarios no ha comparecido a oponerse a tales alegaciones ni a responder a nuestra orden de mostrar causa.

De otra parte, J.A.S.A.P. compareció ante nos y, aunque alegó no ser parte en este caso, para servir "los mejores intereses de la justicia y del orden público" (Moción informativa y en cumplimiento de orden, pág. 2) expuso varias causas por las cuales, a su entender, no debíamos revocar la sentencia dictada.

los peticionarios tenían que haber sido notificados de la determinación tomada por el Cuerpo de Voluntarios. Ello en vista de los planteamientos formulados por J.A.S.A.P. a los efectos de que las autoridades nominadoras no tienen el deber de notificar a todos los solicitantes cuando la plaza de empleo vacante finalmente haya sido adjudicada; razón por la cual, a su entender, el término para apelar de tal decisión comenzaría a decursar desde que se haga efectiva ésta. No le asiste la razón a J.A.S.A.P. Veamos.

■ La Legislatura, mediante la Ley de Personal del Servicio Público de Puerto Rico, estableció la J.A.S.A.P. como el foro apelativo ante el cual se les otorga a los ciudadanos la opción de impugnar las determinaciones de una agencia o autoridad nominadora cuando éstas infrinjan su derecho a ingresar al servicio público en cumplimiento con el principio de mérito.

■ A esos efectos, la Sec. 7.14 de dicha ley, 3 L.P.R.A. sec. 1394, en lo pertinente, dispone lo siguiente:

> Con sujeción a las excepciones que se establecerán más adelante en este Capítulo, se podrá apelar *de las acciones o decisiones* de la Oficina Central, de los Administradores Individuales, y de las autoridades nominadoras, en los casos y por las personas que se especifican a continuación:
>
> . . . . . . .
>
> (2) Por un ciudadano, cuando alegue que una acción o decisión que le afecta viola su derecho a entrar en el Sistema de Administración de Personal en cumplimiento con el principio de mérito.

■ Por su parte, la Sec. 7.15, *supra*, establece el procedimiento de apelación al disponer que la parte afectada "deberá presentar escrito de apelación a la Junta dentro de treinta (30) días *a partir de la notificación de la acción o decisión objeto de la apelación*". (Énfasis suplido.)

■ Ciertamente, la Ley de Personal del Servicio Público de Puerto Rico no contiene una disposición *expresa* en cuanto al deber afirmativo de notificar las decisiones o ac-

ciones tomadas por la agencia o autoridad nominadora, o del derecho a apelarlas en los casos de reclutamiento y selección final de empleados en el servicio público a tenor con el principio de mérito. No obstante, es de notar que dicho deber de notificación se puede colegir claramente de la citada Sec. 7.15. Ello, en vista de que resulta lógico concluir que si tal precepto legal establece que el término para presentar una apelación ante J.A.S.A.P. comenzará a transcurrir *a partir de la notificación de las acciones o decisiones tomadas* por la autoridad nominadora, en consecuencia, establece indirectamente el deber de notificar las acciones o decisiones que, a tenor con la ley, puedan ser objeto de apelación ante J.A.S.A.P.

La contención de J.A.S.A.P. sobre este extremo es a los efectos de que el referido estatuto, al disponer que el término comenzará a transcurrir a partir de la "notificación de la acción o decisión" (3 L.P.R.A. sec. 1395), se refiere a que deberán ser notificadas *las acciones* tomadas por la autoridad nominadora, mas no así las *decisiones*. Sustenta tal alegación en que la conjunción utilizada entre ambas palabras es la "o", conjunción cuya naturaleza resulta ser disyuntiva y no copulativa. Tal argumento no nos persuade.

Somos del criterio que la intención del legislador, al utilizar la conjunción "o" en el referido estatuto, fue la de abarcar en su mandato tanto a la notificación de acciones como a la notificación de decisiones. Varias razones militan en favor de tal criterio.

Debe advertirse que a través de la Ley de Personal del Servicio Público de Puerto Rico, la Legislatura dispuso por igual el derecho a apelar, así como el término para ello, en relación con todo reclamo que surja al amparo de las disposiciones de dicha ley, independientemente de que la determinación impugnada resulte ser una "acción" o una "decisión". Entonces, ¿por qué crear una distinción entre la notificación de acciones y la de decisiones cuando, a fin de

cuentas, una "decisión" como la de autos resulta ser de mayor transcendencia e importancia para un solicitante, ya que dispone finalmente de su solicitud de empleo? Resultaría inconsistente que el legislador hubiese tenido la intención de crear tal distinción.

■ Más aún, la única consecuencia que tendría la interpretación que pretende J.A.S.A.P. sería la de enervar el *derecho* que tiene una parte a cuestionar las "decisiones" que violen su derecho a ingresar en el Sistema de Administración de Personal en cumplimiento con el principio de mérito. Derecho que, al ser provisto por ley en el estatuto orgánico de J.A.S.A.P., forma parte del debido proceso de ley. Véanse: *Falcón Padilla v. Maldonado Quirós*, 138 D.P.R. 983 (1995); *Arroyo Moret v. F.S.E.*, 113 D.P.R. 379 (1982); *Berríos v. Comisión de Minería*, 102 D.P.R. 228 (1974).

Coincidimos con los peticionarios en que resulta razonable el apercibir a las personas sobre los derechos que les asisten sin que tenga ello que quedar supeditado al arbitrio de la autoridad nominadora. En ese sentido, se logra un equilibrio justo entre los derechos de las partes involucradas en el proceso y se garantiza las exigencias del debido proceso de ley.

■ A la luz de lo antes expuesto, resulta ineludible concluir que lo que gramaticalmente quiso decir la Legislatura a través del referido precepto fue que el término para presentar una apelación ante J.A.S.A.P. comenzaría a transcurir a partir de la notificación de las acciones o de la notificación de las decisiones, según fuese el caso. Nótese, además, que hemos resuelto que la conjunción "o" podrá ser intercambiada con la conjunción "y", o viceversa, cuando ello sea necesario para llevar a cabo el propósito evidente del legislador. *Pueblo v. Colón Rosa*, 96 D.P.R. 601 (1968); *De Castro v. Junta de Comisionados*, 57 D.P.R. 153 (1940); *Monllor & Boscio, Sucrs. v. Sancho Bonet, Tes.*, 49 D.P.R. 576 (1936). Véase, además, R.E. Bernier y J.A. Cue-

vas Segarra, *Aprobación e interpretación de las leyes en Puerto Rico*, 2da ed., San Juan, Pubs. J.T.S., 1987 Vol. I, pág. 353.

En consecuencia, resolvemos que como parte del proceso de reclutamiento y selección de empleados, todas aquellas agencias, instrumentalidades o autoridades nominadoras del Estado Libre Asociado de Puerto Rico que se encuentran reguladas por la Ley de Personal del Servicio Público de Puerto Rico, tienen el deber de notificar a los ciudadanos que hayan sido certificados como elegibles, según lo dispone el inciso (9)(a) de la Sec. 4.3 de la referida ley, *supra*, que la plaza por ellos solicitada no les fue adjudicada. Deberán también notificar a dichos ciudadanos su derecho a interponer una apelación ante J.A.S.A.P., así como el término para llevar a cabo dicho trámite. Ello, a los fines de que éstos tengan la oportunidad de determinar si ejercen o no su derecho a apelar ante J.A.S.A.P.([7])

III

Aclarado el hecho de que los aquí peticionarios tenían que haber sido notificados de la decisión tomada en torno a sus solicitudes de empleo, atendemos el reclamo presen-

([7]) Advertimos que el tribunal de instancia sostuvo que el Art. 7, Sec. 7.3(4), del Reglamento de Personal: Áreas Esenciales al Principio de Mérito Núm. 2186, Oficina Central de Administración de Personal, 30 de noviembre de 1976, establece el requisito de notificación en cuanto sostiene que "[s]e notificará por escrito, por cubierta cerrada, a la persona cuya solicitud sea rechazada, informándole la causa del rechazo y su derecho de apelación ante la Junta". Sin embargo, aduce J.A.S.A.P. que dicho estatuto no resulta de aplicación al caso de autos, ya que éste se refiere a las *solicitudes de examen* que son recibidas, en primera instancia, como resultado de las convocatorias de reclutamiento que llevan a cabo las agencias.

Entendemos que podría asistirle la razón a J.A.S.A.P. en cuanto a dicho planteamiento, en vista de que la referida Sec. 7.3, en sus incisos (1) y (2), hace alusión a la revisión de solicitudes de examen recibidas como resultado de los "avisos públicos", y dispone causas, tales como la presentación tardía y la falta de requisitos mínimos en éstas, por las cuales podrían ser rechazadas. Es dentro de ese contexto que efectivamente el reglamento dispone el deber de notificación. Nótese, además, que la Sec. 7.6 del Reglamento, *supra*, regula independientemente la certificación y selección de empleados. No obstante, a la luz de nuestra conclusión anterior, carece de finalidad práctica discutir el ámbito de aplicación del referido estatuto.

tado por éstos en el recurso ante nos. En síntesis, éstos plantean que la doctrina de incuria no es aplicable al caso de autos, pues entienden que demostraron "la multiplicidad de gestiones, tanto judiciales como extrajudiciales, llevados a cabo ... previo a la radicación de la Apelación ante ese cuerpo [J.A.S.A.P.]; gestiones que claramente denotan diligencia e interés ...". Solicitud, pág. 8.

■ En *García v. Adm. del Derecho al Trabajo*, 108 D.P.R. 53 (1978), establecimos la norma de que cuando a la parte afectada no se le notifica su derecho a apelar ante J.A.S.A.P. de la determinación tomada ni del término para efectuar dicho trámite, no aplica el término jurisdiccional de treinta (30) días. En tales casos, el término dentro del cual deberá interponerse la correspondiente apelación quedará sujeto a la doctrina de incuria. Véase, además, *Rivera v. Depto. de Servicios Sociales*, 132 D.P.R. 240 (1992).

■ La doctrina de incuria la hemos definido "como dejadez o negligencia en el reclamo de un derecho, los cuales en conjunto con el transcurso del tiempo y otras circunstancias que causan perjuicio a la parte adversa, opera como un impedimento en una corte de equidad". *Aponte v. Srio. de Hacienda, E.L.A.*, 125 D.P.R. 610, 618 (1990).

■ Como es sabido, en dicha doctrina no basta el mero transcurso del tiempo para impedir el ejercicio de la causa de acción, sino que deben evaluarse otras circunstancias antes de decretar la desestimación del recurso instado. *Srio. D.A.C.O. v. J. Condóminos C. Martí*, 121 D.P.R. 807 (1988); *J.R.T. v. A.E.E.*, 113 D.P.R. 564 (1982); *Pueblo v. Tribl. Superior*, 81 D.P.R. 904 (1960). Circunstancias tales como "la justificación, si alguna, de la demora incurrida, el perjuicio que ésta acarrea y el efecto sobre intereses privados o públicos involucrados". *Rivera v. Depto. de Servicios Sociales*, supra, pág. 247. Además, cada caso deberá ser examinado a la luz de sus hechos y circuns-

tancias particulares. *García v. Adm. del Derecho al Trabajo*, supra.

En el caso de epígrafe nos encontramos ante una situación en la que el Cuerpo de Voluntarios ni tan siquiera informó a los peticionarios la decisión tomada en torno a sus solicitudes de empleo y, mucho menos, de su derecho a apelarla ante J.A.S.A.P., o el término para así hacerlo. A la luz de la normativa antes expuesta, ello tuvo la consecuencia de hacer inaplicable el término jurisdiccional de treinta (30) días, rigiendo la doctrina de incuria.

Ahora bien, el foro recurrido llegó a la conclusión de que los peticionarios habían incurrido en incuria amparándose en las expresiones vertidas por este Tribunal en el caso *García v. Adm. del Derecho al Trabajo*, supra, a los efectos de que el requisito reglamentario de notificación puede tornarse irrelevante si el empleado, de alguna forma, tuvo conocimiento de su deber a apelar con margen suficiente para ejercitarlo oportunamente. No obstante, aunque ciertamente los aquí peticionarios admiten haber obtenido conocimiento extraoficial del nombramiento del señor Reinat con anterioridad a la presentación de la petición de *injunction* ante el Tribunal Superior, y no fue hasta seis (6) meses más tarde que recurrieron ante J.A.S.A.P., pesa sobre nuestro ánimo el hecho de que en dicho período los peticionarios *no se cruzaron de brazos*. Obran circunstancias en el recurso ante nos capaces de justificar la demora incurrida.

En primer lugar, a partir del momento en que los peticionarios advinieron extraoficialmente en conocimiento de que la plaza había sido adjudicada, comenzaron a realizar gestiones tanto judiciales como extrajudiciales dirigidas a que se les notificara *oficialmente* la decisión tomada, así como su fecha. A esos efectos enviaron una carta dirigida al Jefe de Personal del Cuerpo de Voluntarios y otra dirigida a la Asesora Legal de dicho cuerpo, solicitando tal notificación.[8]

---

[8] Copia de dichas cartas obran en el recurso ante nos.

Segundo, en vista de que tales gestiones resultaron infructuosas, procedieron con la presentación de una acción judicial. No fue hasta ese momento, una vez el Tribunal Superior ordena al Cuerpo de Voluntarios que notifique su decisión a los peticionarios, que éstos advinieron en conocimiento *oficial* de ésta, así como de su derecho a apelar ante J.A.S.A.P. Nótese, además, que la sentencia desestimatoria del Tribunal Superior fue notificada el 28 de mayo de 1993 y los peticionarios presentaron su escrito de apelación ante J.A.S.A.P. el 25 de junio de 1993, es decir, tan sólo veintiocho (28) días después.

Por último, el Cuerpo de Voluntarios no ha comparecido a cuestionar las gestiones realizadas por los peticionarios ni a demostrar que le cause un grave perjuicio el hecho de que les permitamos ventilar su caso en los méritos. Por su parte, la comparecencia de J.A.S.A.P. tampoco nos ha convencido de ello.

■ *Ante estos hechos particulares*, concluimos que no podía estimarse que los peticionarios hubiesen incurrido en incuria, por lo que no procedía la desestimación decretada. Si bien es cierto que el orden institucional de mantener la continuidad en la prestación de los servicios en las agencias e instrumentalidades del Estado Libre Asociado de Puerto Rico resulta ser de vital importancia, ello de por sí no podía justificar el que se privara a los aquí peticionarios de su derecho a que su reclamación fuese ventilada en los méritos ante J.A.S.A.P. Máxime si tomamos en consideración que a través del historial legislativo de la Ley de Personal del Servicio Público de Puerto Rico, se desprende que uno de los propósitos principales de dicha legislación es el de proteger adecuadamente el principio de mérito, garantizando y protegiendo al máximo los derechos de los empleados públicos.

Por todos los fundamentos antes expuestos, *se expide el auto solicitado y se dictará sentencia para revocar la sentencia recurrida y para devolver el caso a J.A.S.A.P. de ma-*

*nera que continúen los procedimientos de forma compatible con lo expuesto en esta opinión.*

Los Jueces Asociados Señores Rebollo López y Fuster Berlingeri no intervinieron.