Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| BANCO POPULAR DE PUERTO RICO<br><br>PETICIONARIO<br><br>V.<br><br>MARK ELECTRICAL CONTRACTORS INC.; MARK ANTHONY FERNÁNDEZ DEL VALLE T/C/C, MARK ANTONIO FERNÁNDEZ DEL VALLE, por sí y por representación de la Sociedad Legal de Gananciales constituidas con su esposa JANICE TORRES MALDONADO, en representación de la Sociedad de Gananciales constituida con su esposo Mark Anthony Fernández del Valle, MIGUEL ÁNGEL FERNÁNDEZ PAGÁN y su esposa MARTA DEL VALLE PAGÁN, ambos por sí y en representación de la Sociedad Legal de Gananciales por ellos constituidas.<br><br>RECURRIDO | KLCE202500260 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Ponce<br><br>Civil Núm.:<br><br>JCD20050852<br><br>Sobre:<br><br>Cobro de Dinero y Ejecución de Hipoteca por la Vía Ordinaria |

Panel integrado por su presidenta, la juez Brignoni Mártir, la jueza Alvarez Esnard, y la jueza Prats Palerm

**Brignoni Mártir, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 15 de mayo de 2025

Comparece Banco Popular de Puerto Rico (BPPR o el Peticionario) y solicita la revocación de la *Resolución* emitida el 19 de diciembre de 2024 por el Tribunal de Primera Instancia, Sala de Ponce (TPI o foro primario), notificada el 26 de diciembre del mismo año. Mediante la referida *Resolución*, el foro primario declaró *No Ha Lugar* la *Solicitud de Ejecución de Sentencia* presentada por BPPR el 1 de agosto de 2024, con el fin de ejecutar la *Sentencia Sumaria* emitida a su favor el 19 de diciembre de 2006, en el caso núm. JCD20050852 sobre cobro de dinero y ejecución de hipoteca y concluyó que la acción de ejecución de sentencia presentada por BPPR estaba prescrita.

Por los fundamentos que expondremos a continuación, expedimos el auto de *certiorari* y **revocamos** la *Resolución* recurrida.

**I.**

La controversia ante nuestra consideración se suscitó en la etapa de ejecución de sentencia. Procedemos a exponer el trasfondo procesal pertinente.

El caso de epígrafe inició el 1 de julio de 2005, cuando BPPR presentó una *Demanda* en cobro de dinero y ejecución de hipoteca en contra de Mark Electrical Contractor Inc. (Mark Electrical), Mark Anthony Fernández del Valle t/c/c, Mark Antonio Fernández del Valle, (señor Fernández del Valle), por sí y en representación de la Sociedad de Gananciales compuesta por este y su esposa Janice Torres Maldonado (señora Torres Maldonado), el Sr. Miguel Ángel Fernández Pagán y su esposa, Marta del Valle Pagán, ambos por si y en representación de la Sociedad Legal de Gananciales por ellos constuída (en conjunto, los Recurridos)

El 19 de diciembre de 2006, el TPI dictó *Sentencia Sumaria* a favor de BPPR, en la que condenó a los Recurridos a pagar la suma de $250,419.02 del balance principal de $75,066.61, por los intereses devengados hasta la fecha de la sentencia, además de los que se devenguen hasta el pago total y completo de la deuda, más la suma de $25,200.00 por concepto de costas y honorarios de abogado.[1] El **22 de diciembre de 2006**, el foro primario archivó en autos copia de la notificación de la *Sentencia Sumaria.*[2]

El **21 de octubre de 2020**, BPPR presentó ante el foro primario *Moción en Solicitud de Orden Para Tasar Propiedad* en la que informó que a pesar de haber contratado un tasador no había sido posible lograr acceso a la propiedad objeto del gravamen inmobiliario, sita en la Carr.332 KM 3.8, Barrio Arenas, Guánica, inscrita al Folio 170 del Tomo 52 de Guánica e identificada como Finca 1543.[3]

---

[1] *Véase* páginas 302-311 del Apéndice de la *Petición de Certiorari*
[2] *Véase* páginas 185-186 del Apéndice de la *Petición de Certiorari.*
[3] *Véase* Anejo 14, páginas 197- 198 del Apéndice de la *Petición de Certiorari.*

Posteriormente, el **15 de diciembre de 2022**, BPPR presentó ***Moción en Solicitud de Orden Para Tasar Propiedades*** en la que solicitó al foro primario una orden para tasar e inspeccionar otras propiedades igualmente sitas en la Carr.332 KM 3.8, Barrio Arenas, Guánica, segregadas de la Finca Núm. 1543 de Guánica, identificadas como Finca 7856- Solar A y Finca 7857- Solar B e inscritas en el Registro de la Propiedad, Sección de San Germán.[4] En igual fecha, **15 de diciembre de 2022,** BPPR presentó ante el TPI ***Solicitud de Ejecución Final de Sentencia*** a la que anejó varios documentos .[5] En síntesis, BPPR informó al foro primario que cuando se presentó la Demanda objeto de la *Sentencia Sumaria* emitida el 19 de diciembre de 2006, las hipotecas objeto de ejecución se encontraban presentadas y pendientes de inscripción en sus respectivos solares A y B de la finca matriz núm,1543, y que finalmente los asuntos registrales se habían resuelto.

Mediante *Orden* emitida el 25 de enero de 2023, notificada el 27 de enero de ese año el foro primario declaró Ha Lugar la *Moción en Solicitud de Orden Para Tasar Propiedades.* [6] En esa fecha, el TPI emitió además, *Orden* en la que requirió a BPPR someter Proyecto de Orden de Ejecución conforme el tipo mínimo dispuesto en la *Sentencia Sumaria.*[7] El **23 de febrero de 2023**, **BPPR presentó *Moción Anejando Proyecto de Orden.*[8]**

El 9 de marzo de 2023, el foro primario emitió *Orden de Ejecución de Sentencia* y el 15 de marzo de ese año expidió *Mandamiento de Ejecución de Sentencia.* Posteriormente, el 15 de mayo de 2023, a solicitud de BPPR, el foro primario emitió *Orden* a los Recurridos para que en el término de diez días permitieran el acceso a las propiedades sitas en la Carr323 Km.3.8 del Barrio Arenas de Guánica para realizar la tasación de la Finca Núm. 7856 (Solar A) y la Finca Núm. 7857 (Solar B).[9] El 19 de mayo de 2023, el foro

---

[4] *Véase* Anejo 15 , páginas 216-217 del Apéndice de la *Petición de Certiorari*
[5] *Véase* páginas 248-261 del Apéndice de la *Petición de Certiorari.*
[6] *Véase* páginas 262-264 del Apéndice de la *Petición de Certiorari.*
[7] *Véase* páginas 265-267 del Apéndice de la *Petición de Certiorari.*
[8] *Véase* páginas 268-276 del Apéndice de la *Petición de Certiorari.*
[9] *Véase* páginas 281-283 del Apéndice de la *Petición de Certiorari.*

primario expidió el correspondiente Mandamiento para tasar las propiedades objeto de ejecución.[10]

**En lo pertinente, el 16 de febrero de 2024**, BPPR presentó ante el TPI *Moción Informativa Sobre Dirección de los Demandados y Solicitando Se Expida Notificación de Sentencia* en la que expuso que tras verificar la notificación de la *Sentencia Sumaria* de 19 de diciembre de 2006, a ejecutarse, **se percató de que esta no fue notificada a las direcciones , de todos los demandados**.[11] Así las cosas, BPPR solicitó al TPI que procediera a notificar la aludida Sentencia Sumaria a todos los demandados a las últimas direcciones conocidas de estos, las cuales incluyó en dicha moción, según surgen de la demanda y demás documentos presentados en el caso.[12]

Sobre estos extremos, el foro primario emitió *Orden* el **5 de marzo de 2024**, **notificada el 8 de marzo de ese año.**[13] **Mediante esta el TPI ordenó  expresamente que se expidiera nuevamente la notificación de sentencia a la última dirección conocida donde fue emplazada cada parte, según consta en el expediente judicial y además,  advirtió que el sistema de notificación de secretaría no permite la notificación a tantas direcciones para cada demandado.[14] En igual fecha, 8 de marzo de 2024, el TPI emitió Notificación Enmendada de la Sentencia emitida el 19 de diciembre de 2006.[15]**

Posteriormente, el **28 de mayo de 2024,** BPPR presentó ante el foro primario *Moción Solicitando Notificación*.[16] Allí expuso que si bien en la Notificación Enmendada de 8 de marzo de 2024, se notificó correctamente la *Sentencia Sumaria* a los codemandados Mark Electrical, señor Fernández del Valle y señora Torres Maldonado dicha **Notificación Enmendada** omitió notificar correctamente la *Sentencia Sumaria*  a los codemandados Marta

---

[10] *Véase* páginas 284-285 del Apéndice de la Petición de Certiorari.
[11] *Véase* páginas 286-296 del Apéndice de la *Petición de Certiorari.*
[12] *Id.*
[13] *Véase* páginas 297-299 del Apéndice de la *Petición de Certiorari.*
[14] *Id.*
[15] *Véase* páginas 300-301 del Apéndice de la *Petición de Certiorari.*
[16] *Véase* Anejo 27, páginas 312-313 del Apéndice de la *Petición de Certiorari.*

Del Valle Pagán y Miguel Fernández Pagán a la dirección donde fueron emplazados, según consignada en la determinación de hecho número 2 (c) de la Sentencia.[17]

Así las cosas, el 7 de junio de 2024, el TPI emitió *Resolución*, notificada el 21 de junio de 2024, en la que declaró *Ha Lugar* la **Moción Solicitando Notificación** presentada por BPPR el 28 de mayo de 2024.[18] Finalmente, la *Sentencia Sumaria* emitida el 19 de diciembre de 2006, fue notificada el **21 de junio de 2024 mediante Notificación Enmendada a los fines de "notificar a nuevas direcciones de las partes demandadas".**[19]

El **1 de agosto de 2024**, BPPR presentó *Solicitud de Ejecución de Sentencia* con el fin de ejecutar la *Sentencia Sumaria* emitida a su favor el 19 de diciembre de 2006, notificada finalmente el 21 de junio de 2024.[20] En esencia, BPPR señaló que tras la notificación enmendada de 21 de junio de 2024, la *Sentencia Sumaria* emitida a su favor había advenido final, firme y ejecutable por lo que solicitó al foro primario que autorizara la ejecución de las garantías prendarias hipotecarias por $10,000.00 y $100,000.00 relacionadas en la *Sentencia Sumaria*.

El 7 de agosto de 2024, el señor Fernández del Valle presentó ante el foro primario *Moción de Comparecencia y en Solicitud de Término Para Reaccionar.[21]* En ajustada síntesis, el señor Fernández del Valle argumentó que la acción de ejecución de sentencia de BPPR estaba prescrita, toda vez que la Sentencia Sumaria fue emitida hace dieciocho años (18) por lo que ya había transcurrido el término de quince años dispuesto en el Artículo 1871 del Código Civil de 1930, y que además, en todo caso aplicaba la doctrina de incuria por la dejadez de BPPR en ejecutar la sentencia. De igual forma esbozó el señor Fernández del Valle *Moción de Comparecencia y en Solicitud de Término Para Reaccionar* que las alegaciones de BPPR sobre

---

[17] Los codemandados, Marta Del Valle Pagán y Miguel Fernández Pagán no comparecieron al pleito. Ambos fueron emplazados en el Bo. Luna, HC Box 3625, Parcela 411, Guánica, PR, 00653.
[18] *Véase* páginas 318-319 del Apéndice de la *Petición de Certiorari*.
[19] *Véase* páginas 320-322 del Apéndice de la *Petición de Certiorari*.
[20] *Véase* páginas 333-335 del Apéndice de la *Petición de Certiorari*.
[21] *Véase* páginas 336-337 del Apéndice de la *Petición de Certiorari*.

falta de notificación adecuada constituían un intento temerario de revivir una Sentencia prescrita.[22]

El 12 de agosto de 2024 el TPI emitió *Orden,* notificada el 26 de agosto de ese año, en la que, entre otros asuntos, ordenó a BPPR reaccionar al planteamiento de prescripción del señor Fernández del Valle.[23]

En respuesta, el 12 de septiembre de 2024, BPPR presentó *Moción en Cumplimiento de Orden* en la que alude a la *Solicitud de Autorización de Ejecución Final de Sentencia* presentada 15 de diciembre de 2022 debidamente notificada al señor Fernández del Valle y en la que se acreditaron las razones que justificaban la ejecución de la sentencia *.[24]*

El 11 de septiembre de 2024, el señor Fernández del Valle presentó *Moción en Cumplimiento de Orden y Respuesta a Moción en Cumplimiento de Orden de Parte Demandante*.[25] Señala el señor Fernández del Valle que la *Sentencia Sumaria* fue emitida por el foro primario el 19 de diciembre de 2006, archivada en autos copia de su notificación el 22 de diciembre de 2006 y que no surge del expediente que las notificaciones de la Sentencia fueran defectuosas. Razona que por tanto, el término prescriptivo de quince años para exigir su ejecución prescribió el 22 de diciembre de 2021, por lo que también la *Solicitud de Autorización de Ejecución Final de Sentencia* presentada 15 de diciembre de 2022 por BPPR estaba prescrita.

Mediante *Resolución* emitida el 1 de diciembre de 2024, notificada el 26 de diciembre del mismo año, el foro primario declaró *No Ha Lugar* a la *Solicitud de Ejecución de Sentencia* presentada por BPPR el 1 de agosto de 2024 y *Ha Lugar* la *Moción en Cumplimiento de Orden y Respuesta a Moción en Cumplimiento de Orden de Parte Demandante* presentada por el señor Fernández del Valle el 11 de septiembre de 2024.[26] **Concluyó el foro primario que el término de quince (15) años para exigir el cumplimiento de la obligación declarada por la *Sentencia Sumaria* emitida a favor de**

---

[22] *Id.*
[23] *Véase* páginas 338-341 del Apéndice de la *Petición de Certiorari.*
[24] Véase páginas 342-352 del Apéndice de la *Petición de Certiorari.*
[25] *Véase* páginas 353-359 del Apéndice de la *Petición de Certiorari.*
[26] *Véase* páginas 377-391 del Apéndice de la *Petición de Certiorari*.

**BPPR, <u>había prescrito</u>** y que las notificaciones enmendadas de la *Sentencia Sumaria* de 8 de marzo de 2024 y 21 de junio de ese año fueron devueltas por el correo postal.[27] Sobre estos extremos, el TPI enfatizó que de la notificación de la *Sentencia Sumaria* cursada el 22 de diciembre de 2006 solo fueron devueltas las notificaciones dirigidas al señor Fernández del Valle, Mark Electrical y a la señora Torres Maldonado, pero que el Lcdo. Ángel Morales Rodríguez, representante legal de estos, fue debidamente notificado de la *Sentencia Sumaria* que recayó en contra de sus clientes. Razonó el foro primario que la notificación de la Sentencia Sumaria realizada el 22 de diciembre de 2006 cumplió con lo dispuesto en la Regla 67 de Procedimiento Civil, que establece que las partes que hayan comparecido representados por abogado se efectuarán al abogado.[28] El foro primario razonó además, que **BPPR tenía un deber de realizar la ejecución de sentencia en o antes del <u>22 de diciembre de 2021</u> y que se cruzó de brazos al esperar hasta el <u>15 de diciembre de 2022</u>**, cuando ya habían transcurrido dieciséis (16) años para solicitar la ejecución la sentencia, por lo que incumplió con los artículos 1864 y 1871 del Código Civil de 1930, 31 LPRA sec. 5295 y 5301.[29] Finalmente, destacó además el TPI que tras lograr la subsanación de los asuntos registrales, entre el 20 de marzo de 2020, el 16 de junio de 2020 y el 18 de junio de 2021, **BPPR no realizó ningún acto para ejercitar su derecho a ejecutar la sentencia, a pesar de estar estas fechas dentro del término prescriptivo de quince años**.[30]

En desacuerdo, el 10 de enero de 2025, BPPR presentó *Solicitud de Reconsideración*.[31] En esencia, BPPR esbozó que primeramente la ejecución de la sentencia en el caso fue suspendida por efecto de ley pues BPPR estaba impedido de ejecutar una hipoteca que a pesar de estar

---

[27] *Véase p*ágina 8 de la *Resolución* recurrida a la página 384 del Apéndice de la *Petición de Certiorari*.

[28] *Véase* páginas 13-14 de la *Resolución* recurrida, a las páginas 389-390 del Apéndice de la *Petición de Certiorari.*

[29] *Véase* página 390 del Apéndice de la *Petición de Certiorari*.

[30] *Véase* página 14 de la *Resolución* recurrida, a la página 390 del Apéndice de la *Petición de Certiora*ri.

[31] *Véase* páginas 392-461 del Apéndice de la *Petición de Certiorari.*

presentada todavía se inscribió finalmente el **13 de junio de 2022** y solicitó la celebración de una vista argumentativa.

Mediante *Resolución* de 11 de febrero de 2025, notificada el 13 de febrero del corriente año, el foro primario declaró *No Ha Lugar* a la *Solicitud de Reconsideración* presentada por BPPR. [32]

Inconforme, BPPR recurre ante nosotros mediante el recurso de epígrafe y como único señalamiento de error sostiene lo siguiente

> Erró el honorable tribunal de primera instancia al emitir la *resolución* de la cual se recurre y determinar que la acción de ejecución de sentencia estaba prescrita en contravención a las disposiciones de las reglas de procedimiento civil, de la ley de transacciones comerciales de su jurisprudencia interpretativa.

El 15 de abril de 2025, mediante *Escrito en Oposición de Certiorari*, compareció ante nos el señor Fernández del Valle, por sí y en representación de la Sociedad Legal de Gananciales compuesta por este y por su esposa, la señora Torres Maldonado. En esencia, sostienen que no se configuran las instancias necesarias para la expedición del auto de *certiorari* solicitado por BPPR. Arguyen que de los propios actos de BPPR surge que el término de cinco años dispuesto por la Regla 51 de Procedimiento Civil, *supra*, expiró sin interrupción alguna. Razona la parte recurrida que dicho término corre desde que la sentencia es final y firme y que la falta de inscripción de la hipoteca, la cual había sido presentada y se encontraba en espera de inscripción, no tiene efecto interruptor alguno en dicho término. Finalmente, sostienen los recurridos que BPPR tuvo siempre la posibilidad de solicitar una ejecución de sentencia de cobro de dinero y de solicitar el embargo de las propiedades a los fines de ejecutar la sentencia a su favor, y que al cruzarse de brazos incurrió en incuria.

**II.**

A.

El *certiorari* es un recurso de carácter discrecional. *800 Ponce de León v. AIG*, 205 DPR 163 (174) (2020); *IG Builders v. BBVAPR,* 185 DPR 307, 337 (2012); *Feliberty v. Soc. de Gananciales*, 147 DPR 834, 837 (1999).

---

[32] *Véase* páginas 462-468 del Apéndice de la *Petición* de Certiorari.

Dicha discreción está delimitada por la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, la cual nos faculta para revisar los asuntos bajo las Reglas 56 y 57 de Procedimiento Civil, y las denegatorias de mociones de carácter dispositivo. *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023). A manera de excepción, podremos revisar asuntos sobre la admisibilidad de testigos de hechos o peritos esenciales, privilegios evidenciarios, anotaciones de rebeldía, relaciones de familia, casos que revistan interés público o cualquier otro asunto en el cual esperar hasta una apelación constituiría un fracaso irremediable de la justicia.

Si bien la Regla 52.1, *supra*, limita el ámbito de discreción a asuntos interlocutorios, la Regla 40 de nuestro Reglamento, 4 LPRA Ap. XXII-B, R. 40, nos provee otros criterios para ejercer nuestra discreción; y nos sirve de guía para poder, de manera sabia y prudente, tomar la determinación de si procede o no intervenir en determinaciones post- sentencia. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008). Dichos criterios son los siguientes:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Al revisar una determinación de un tribunal de menor jerarquía, como Tribunal de Apelaciones, tenemos la tarea principal de auscultar si el tribunal revisado aplicó correctamente el derecho a los hechos particulares del caso ante sí. *Ávila Nieves v. Meléndez Marín*, 187 DPR 750, 770 (2013). Como regla general, los tribunales apelativos no tenemos la facultad de sustituir las determinaciones del foro de instancia con nuestras propias apreciaciones. *Dávila Nieves v. Meléndez Marín*, supra, pág. 771; *Serrano Muñoz v. Auxilio*

*Mutuo*, 171 DPR 717, 741 (2007). La excepción norma general ocurre cuando la parte demuestra al tribunal apelativo que el juzgador de instancia actuó motivado por: 1) pasión, 2) prejuicio, 3) parcialidad, o 4) que incurrió en error manifiesto. *Dávila Nieves v. Meléndez Marín*, supra, pág. 771.

Según destacó nuestro Tribunal Supremo en *I.G. Builders et al. v. B.B.V.A.P.R.*, supra, págs. 336-339, como foro apelativo debemos realizar un análisis más cauteloso de los criterios provistos por la Regla 40, *supra*, en aquellos escenarios que no pudieran ser revisables al amparo de la Regla 52.1, *supra*. Tal es el caso de las determinaciones *post sentencia*, que de otro modo no pudieran ser revisadas. Según aclaró nuestro máximo foro: "La Regla 40, *supra,* adquiere mayor relevancia en situaciones en que, de ordinario, no están disponibles métodos alternos para asegurar la revisión de la determinación cuestionada. Las resoluciones referentes a asuntos *post sentencia* no están comprendidas entre aquellas determinaciones de naturaleza interlocutoria categóricamente sujetas a escrutinio mediante el recurso de *certiorari*. De otra parte, por emitirse este tipo de decisión luego de dictada la sentencia, usualmente tampoco cualifica para el recurso de apelación provisto para dictámenes judiciales finales. Se corre el riesgo, por lo tanto, de que fallos erróneos nunca se vean sujetos a examen judicial simplemente porque ocurren en una etapa tardía en el proceso, tal como lo es la ejecución de sentencia". *I.G. Builders et al. v. B.B.V.A.P.R.*, supra, pág. 339.

B.

La Regla 51 de Procedimiento Civil, 32 LPRA ap. V., R 51. regula el procedimiento de apremio o ejecución de sentencia.

En lo pertinente, la Regla 51.1 *supra,* dispone expresamente lo siguiente:

> La parte a cuyo favor se dicte sentencia podrá ejecutarla mediante el procedimiento fijado en esta Regla 51, en cualquier tiempo dentro de cinco (5) años de ésta ser firme. **Expirado dicho término, la sentencia podrá ejecutarse mediante una autorización del tribunal, a moción de parte y previa notificación a todas las partes**. **Si después de registrada la sentencia se suspende su ejecución por una orden o sentencia del tribunal, o por efecto de ley, el tiempo durante el cual ha sido suspendida dicha ejecución deberá excluirse del cómputo de los cinco (5) años**

**durante los cuales podrá expedirse el mandamiento de ejecución**.

Este procedimiento "le imprime continuidad a todo proceso judicial que culmina con una sentencia", y es necesario utilizarlo cuando la parte obligada incumple con los términos de la sentencia. *Mun. de San Juan v. Prof. Research*, 171 DPR 219, 248 (2007) citando a R. Hernández Colón, *Práctica jurídica de Puerto Rico; derecho procesal civil*, San Juan, Ed. Michie de PR, 1997, Cap. 63, pág. 453. Como regla general, las sentencias se ejecutan en el tribunal que dictó la sentencia que se pretende ejecutar. *Mun. de San Juan v. Prof. Research*, supra*,* pág. 248.

Ahora bien, nótese que, conforme al texto de la citada Regla, la parte a cuyo favor se dictó una sentencia podrá ejecutarla en cualquier momento dentro de los cinco (5) años de haber advenido final y firme. Sin embargo, transcurrido ese periodo, procede su ejecución únicamente con la autorización del tribunal y luego de que se notifique la solicitud a la parte contraria para que esta pueda expresarse al respecto. Íd. El propósito de la notificación es que la parte afectada por una sentencia, luego de transcurrido un tiempo considerable de que ésta haya advenido firme, tenga la oportunidad de expresarse por escrito al respecto en caso de que tenga alguna defensa que anteponer a tal gestión. *Banco Terr. y Agricola de Puerto Rico v. Marcial*, 44 DPR 129, 132 (1932). Además, para que el tribunal quede plenamente convencido, conforme a las constancias del expediente judicial, de que la sentencia no ha sido satisfecha y no existe alguna razón que impida su ejecución. Íd.

El tratadista José Cuevas Segarra advierte que, aunque la Regla 51.1 de Procedimiento Civil, *supra*, es de carácter procesal, deben tenerse presente los términos prescritos para el cumplimiento de las obligaciones a los fines de determinar por cuánto tiempo el tribunal retiene autoridad para permitir la ejecución de una sentencia expirado el término de cinco años. J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, 2da ed., San Juan, Pubs. J.T.S., 2011, T. IV, pág. 1431.

Dicho lo anterior, cabe precisar que el término prescriptivo de las acciones hipotecarias es de 20 años y las personales que no tengan señalado término especial de prescripción, como las de cobro de dinero, es de 15 años. Art. 1864 del Código Civil, 31 LPRA sec. ant. 5294.[33] **Estos términos comienzan a transcurrir a partir de la fecha en que la sentencia advino final y firme**. Art. 1871 del Código Civil, 31 LPRA sec. ant. 5301.

C.

La Regla 67 de Procedimiento Civil, 32 LPRA Ap. V, regula la notificación y presentación de escritos. La Regla 67.1, *supra,* dispone expresamente que **"[t}oda orden emitida por el tribunal y todo escrito presentado por las partes será notificado a todas las partes** y que la notificación se efectuará el mismo día en que se emita la orden o se presente el escrito. Por su parte, la Regla 67.2 de Procedimiento Civil, establece que siempre que una parte haya comparecido representada por abogado o abogada, la notificación será efectuada al abogado o abogada, a menos que el tribunal ordene que la notificación se efectúe a la parte misma.

D.

La doctrina de incuria significa la "dejadez o negligencia en el reclamo de un derecho, los cuales en conjunto con el transcurso del tiempo y otras circunstancias que causan perjuicio a la parte adversa, opera como un impedimento en una corte de equidad". *Alonso Piñero v. UNDARE, Inc.*, 199 DPR 32, 53 (2017); *Consejo Titulares v. Ramos Vázquez*, 186 DPR 311, 340 (2012). Ahora bien, no basta el mero transcurso del tiempo para que exista incuria, sino que es que es necesario evaluar otras circunstancias tales como (1) la justificación, si alguna, de la demora incurrida, (2) el perjuicio que ésta acarrea y (3) el efecto sobre intereses privados o públicos involucrados. *Rivera v. Depto. de Servicios Sociales*, 132 DPR 240 (1992); *J.R.T. v. A.E.E.,*

---

[33] La Ley Núm. 55-2020, conocida como el Código Civil de Puerto Rico de 2020 –el cual entró en vigor el 28 de noviembre de 2020– derogó el Código Civil de Puerto Rico de 1930. Sin embargo, para propósitos de la adjudicación de esta controversia estaremos citando el Código Civil de 1930, el cual estaba vigente en el momento en que se presentó la *Demanda* del caso de autos.

113 DPR 564 (1982). Por consiguiente, "cada caso deberá ser examinado a la luz de sus hechos y circunstancias particulares". *Comisión Ciudadanos v. G.P. Real Property*, 173 DPR 998, 1020 (2008) (citando a *Pérez, Pellot v. J.A.S.A.P.*, 139 DPR 588, 599 (1995).

**III.**

No debemos perder de perspectiva que, nuestro ordenamiento jurídico nos brinda la discreción de intervenir en aquellos dictámenes interlocutorios o *post sentencia* en los que el foro de primera instancia haya sido arbitrario, haya cometido un craso abuso de discreción o cuando, de la actuación del foro, surja un error en la interpretación o la aplicación de cualquier norma procesal o de derecho sustantivo.

Previo a atender la controversia ante nos, debemos señalar que, en el presente recurso se recurre de una resolución atinente a un asunto post sentencia, la cual no se encuentra comprendida entre aquellas determinaciones de naturaleza interlocutoria evaluadas al amparo de la Regla 52.1 de Procedimiento Civil, *supra*. Sin embargo, de conformidad con los criterios establecidos en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra,* este foro apelativo intermedio se encuentra en posición de expedir el auto para corregir un error de derecho y para poder evitar un fracaso de la justicia.

En lo pertinente a los términos prescriptivos para el ejercicio de una acción, es preciso destacar que los **términos comienzan a transcurrir a partir de la fecha en que la sentencia advino final y firme. En el caso que nos ocupa la *Sentencia Sumaria,* emitida por el TPI el <u>19 de diciembre de 2006</u>, cuya ejecución fue objeto de la denegatoria del foro primario en la *Resolución* recurrida, fue archivada en autos copia de su notificación <u>el 22 de diciembre de 2006.</u>**

Surge de la *Resolución* recurrida que, las notificaciones de la *Sentencia Sumaria* cursadas el 22 de diciembre de 2006, dirigidas al señor Fernández del Valle , Mark Electrical y  a la señora Torres Maldonado fueron devueltas por el correo postal. Sin embargo, dicha notificación cursada en

esa fecha fue recibida por el Lcdo. Ángel Morales Rodríguez, por lo que el representante legal de estos fue debidamente notificado de la *Sentencia Sumaria* que recayó en contra de sus clientes.

Es preciso destacar que conforme a lo dispuesto en la Regla 51.1 de Procedimiento Civil, **expirado el término de cinco años para ejecutar la sentencia, <u>esta podrá ejecutarse mediante una autorización del tribunal, a moción de parte y previa notificación a todas las partes.</u>** Sobre estos extremos, en el caso que nos ocupa, **BPPR cumplió con las exigencias de la Regla 51.1 de Procedimiento Civil, *supra*.** Es decir, el 15 de diciembre de 2022, presentó *Solicitud de Autorización de Ejecución Final de Sentencia,* le notificó a los Recurridos dicha solicitud y el 23 de febrero de 2023, presentó *Moción Anejando Proyecto de Orden*. A raíz de lo anterior el 9 de marzo de 2023 el foro primario emitió *Orden de Ejecución de Sentencia* y el 16 de marzo de ese año expidió Mandamiento de Ejecución.[34]

De otra parte, es preciso destacar que BPPR estuvo impedido de ejecutar la hipoteca cuya inscripción es constitutiva, por esta no estar inscrita al momento de emitirse la *Sentencia Sumaria*, a pesar de estar presentada y pendiente de inscripción. Es por ello, que el término durante el cual estuvo vigente la suspensión por efecto de ley por no constar inscrita la hipoteca a ejecutarse, se excluye del término de cinco (5) años para ejecutar la sentencia. Ello además, de que BPPR solicitó autorización al foro primario para ejecutar la sentencia el 15 de diciembre de 2022, cuando ya había transcurrido el aludido término de cinco años y le fue concedido por el TPI mediante *Orden de Ejecución de Sentencia* de 9 de marzo de 2023, emitida en el ejercicio de la discreción que le confiere la Regla 53.1, *supra*.

Recordemos que el propósito de la solicitud de autorización del tribunal para la ejecución de una sentencia que dispone la Regla 51.1 de Procedimiento Civil, *supra*, es que este quede plenamente convencido de que la sentencia no ha sido satisfecha y que no existe alguna razón que impida su ejecución. Tras un análisis detenido del expediente, no existe duda

---

[34] *Véase* páginas 277-280 del Apéndice de la *Petición de Certiorari.*

de que la sentencia no ha sido satisfecha y tampoco existe una razón que impida su ejecución.

**IV,**

Por los fundamentos antes expuestos, **expedimos** el auto de *certiorari*, **revocamos** la *Resolución* recurrida y ordenamos la continuación de los procedimientos conforme a lo aquí resuelto.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones